UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AKF, INC. d/b/a FUNDKITE,

                              Plaintiff,

v.                                                                 1:21-cv-1074 (BKS/DJS)

BARGAIN JUNCTION, LLC,
OZARKS DISTRIBUTION, LLC,
LOAD BROS., LLC,
SPRINGFIELD PROPERTY SOLUTIONS, LLC,
SHELBY LYNETTE KRAM,
and ZACHARY SCOTT KRAM,

                              Defendants.
_____

**Appearances:**

*For Plaintiff*:
Shanna M. Kaminski
Kaminski Law, PLLC
P.O. Box 247
Grass Lake, MI 49240

*For Defendants*:
Robert C. Jacovetti
Jacovetti Law, P.C.
100 Garden City Plaza, Suite 227
Garden City, NY 11530

**Hon. Brenda K. Sannes, Chief United States District Court Judge:**

MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff AKF, Inc. d/b/a FundKite ("FundKite") brings this diversity action against Defendants Bargain Junction, LLC, Ozarks Distribution, LLC, Load Bros., LLC, Springfield Property Solutions, LLC, Shelby Lynette Kram ("Ms. Kram"), and Zachary

Scott Kram ("Mr. Kram") asserting claims of specific performance, breach of contract, and breach of performance guaranty. (Dkt. No. 28). Presently before the Court is Plaintiff's motion for partial summary judgment under Federal Rule of Civil Procedure 56, with respect to its breach of contract and breach of performance guaranty claims. (*See* Dkt. No. 54). Defendants oppose Plaintiff's motion. (Dkt. No. 57, Dkt. No. 57-1). For the following reasons, Plaintiff's motion is denied without prejudice to renewal.

## II.   FACTS[1]

### A.   Terms of the Contract

On July 21, 2021, FundKite entered into an agreement (the "Agreement") with Bargain Junction in which FundKite agreed to purchase $568,000 (the "Purchased Amount") of Bargain Junction's receipts (the "Receipts"), defined as

> all of [Bargain Junction's] future sales, accounts, contract rights and other obligations and entitlements arising from or relating to the payment of monies from [Bargain Junction's] customers and/or third party payers and the proceeds thereof including, but not limited to all payments made by cash, check, electronic transfer or other form of monetary payment in the course of [Bargain Junction's] business.

---

[1] The facts are drawn from Plaintiff's Statement of Material Facts (Dkt. No. 54-1), Plaintiff's Exhibit 1 (a copy of the contract) (Dkt No. 54-4), and the declaration of Alex Shvarts, the Chief Executive Officer ("CEO") of FundKite (Dkt. No. 54-3). Defendants failed to respond to Plaintiff's Statement of Material Facts with a response mirroring Plaintiff's assertions, admitting or denying each assertion, as required by Local Rule 56.1(b). Instead, Defendants filed a "Statement of Facts," which contains several facts that are unsupported by any citation to the record or any evidence in the record. The Court has not considered those facts. *See Lyman v. City of Albany*, 597 F. Supp. 2d 301, 304 (N.D.N.Y. 2009) (finding that Defendant's facts were admitted and that no genuine issues of material fact existed where Plaintiff "failed to specifically controvert Defendant's facts as set forth in the Statement of Material Facts, and failed to provide citations to the record where any factual issues arise or in support of any of the statements set forth by Plaintiff"). To the extent Defendants' facts are supported by record cites, the Court will consider the facts. The Court warns Defendants, however that any future filings must comply with the Court's local rules.

(Dkt. No., 54-1, ¶ 1, Dkt. No. 54-4, at 3–4; *see also* Dkt. No. 57, ¶ 1). In exchange, Bargain Junction would receive a $383,815 payment (the "Disbursement Amount"), from FundKite, an amount equal to the purchase price for the receipts after deducting service fees. (*See* Dkt. No. 54-4, at 3–4). The contract was backed by a Guaranty of Performance (the "Guaranty") entered into by Ozarks Distribution, Load Bros., Springfield Property Solutions, Ms. Kram, and Mr. Kram (collectively, the "Guarantors"). (*Id.* at 17– 22, Dkt. No. 54-1, ¶ 2; *see also* Dkt. No. 57, ¶ 1).

Under the terms of the Agreement, Bargain Junction would remit ten percent of its Receipts (the "Remittance Percentage") to FundKite each week until the total amount remitted equaled $568,000. (*See* Dkt. No. 54-1, ¶ 4, Dkt. No. 54-4, at 3–4). The Agreement stated that FundKite would debit $15,777.78 (the "Initial Estimated Delivery Amount"), each week from a bank account (the "Designated Account") held by Bargain Junction at The Bank of Billings. (Dkt. No. 54-1, ¶ 3–4, Dkt. No. 54-4, at 3–4; *see also* Dkt. No. 57, ¶ 2). As the Initial Estimated Delivery Amount, $15,777.78, was meant to approximate the Remittance Percentage for one week, the Agreement provided that once a month FundKite would initiate a reconciliation procedure and adjust the Initial Estimated Delivery Amount to accurately reflect the Remittance Percentage. (Dkt. No. 54-1, ¶¶ 4–5; Dkt. No. 54-4, at 5). "Absent manifest error," FundKite's calculation of Bargain Junction's "actual Receipts" over the review period was to be "conclusive." (Dkt. No. 54-4, at 5; Dkt. No. 57, ¶ 3).

The contract also includes a section entitled "Events of Default." (Dkt. No. 54-4, at 8). Two such events are relevant here. The Agreement designates Bargain Junction's "refus[al] to deliver the Remittance Percentage of its Receipts as required by th[e]

2

Agreement" as an Event of Default. (*Id.*; *see also* Dkt. No. 54-1, ¶ 13). It also states that an Event of Default would occur if FundKite "is unable, at any time, to successfully debit the Designated Account [at the Bank of Billings] due to any 'block' placed on [FundKite's] debits by or at the behest of [Bargain Junction]." (Dkt. No. 54-4, at 8).

The Guaranty requires the Guarantors to ensure Bargain Junction performs certain obligations, including its "obligation to remit the Receipts as required by the Agreement" and its "obligation to deliver Receipts as required by the Agreement without interruption by way of 'stop payment' or any 'block' on [FundKite's] debits." (*Id.*, at 17; *see also* Dkt. No. 54-1, ¶¶ 11, 13).

The Agreement states that if an Event of Default event occurs (and is not waived):

> [T]he Remittance Percentage shall equal 100% and the full uncollected Purchased Amount of all Receipts plus all fees and charges (including reasonable attorney's fees, costs and default fees) due under this Agreement will become due and payable in full. [FundKite] may proceed to protect and enforce its rights or remedies by suit in equity or by action at law or both, whether for the specific performance of any event, agreement or other provision contained herein, or to enforce the discharge of [Bargain Junction's] obligations or any other legal or equitable right or remedy.

(Dkt. No. 54-1, ¶ 14; Dkt. No. 54-4, at 8–9). Additionally, "[i]n the event that [Bargain Junction] fails to perform any of the Guaranteed Obligations, [FundKite] may enforce its rights under this Guaranty against any and all Guarantor(s)." (Dkt. No. 54-1, ¶ 2, Dkt. No. 54-4 at 17).

    **B.**    **Current Dispute**

FundKite wired Bargain Junction the Disbursement Amount, $383,815.00, on July 22, 2021, and began debiting the Initial Estimated Delivery Amount, $15,777.78, from Bargain Junction's Designated Account each week. (Dkt. No. 54-1, ¶¶ 6–7; *see also* Dkt. No. 57, ¶ 2). On August 31, 2021, FundKite notified Bargain Junction of the right to

3

reconciliation, and, after reviewing Bargain Junction's Receipts for the month of August, notified Bargain Junction on September 2, 2021, that the new weekly delivery amount (the "Adjusted Delivery Amount") would be $16,009.23 beginning September 10, 2021. (*Id.*, ¶ 8; *see also* Dkt. No. 57, ¶¶ 4–5, 8).

According to Alex Shvarts, the Chief Executive Officer of FundKite, "[o]n September 29, 2021, FundKite received notice that it could not debit the Adjusted Delivery Amount from the Designated Account because The Bank of Billings had been instructed to block FundKite's debits from the Designated Account." (Dkt. No. 54-1, ¶¶ 9–10; Dkt. No. 54-3, ¶¶ 10–11). Mr. Shvarts also stated that:

> On September 29, 2021 . . . FundKite sent a blocked account notice to Bargain Junction and a notice of Event of Default to Bargain Junction and Ms. Kram. FundKite was subsequently advised that Bargain Junction had hired a debt restructuring company called Corporate Client Services ("CCS") and, when FundKite contacted CCS in an attempt to resolve the block, it was advised that its debits from the Designated Account would not be restored and that FundKite should send a settlement proposal despite the fact that Bargain Junction continues to operate and generate Receipts.

(Dkt. No. 54-1, ¶ 12; Dkt. No. 54-3, ¶ 13).

### C.   Unsupported Allegations by Defendants

In their "Statement of Facts," Defendants, without evidentiary support, make several additional contentions. Defendants assert that FundKite "made a manifest error when it calculated Defendants' actual Receipts for [August]." (Dkt. No. 57, ¶ 6). Defendants also assert that they "did not instruct The Bank of Billings to block Fund[K]ite's debits from the Designated Account." (*Id.*, ¶ 11). Likewise, they state that "Defendants did not hire CCS, nor did Defendants instruct CCS to inform Plaintiff that debits from the Designated Account would not be restored and that Defendants continued

4

to operate and generate receipts." (*Id.*, ¶ 14). The Court has not considered these unsupported allegations. *See supra* n.1.

### III.    STANDARD OF REVIEW

Under Rule 56(c), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus.*

5

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

IV.     **DISCUSSION**

FundKite claims Bargain Junction breached the Agreement and that the Guarantors breached the Guaranty, both under New York law. (*See generally* Dkt. No. 54-2). Each claim is addressed below.

A.      **Breach of Contract**

"The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *Grice v. McCurdy*, 498 F. Supp. 3d 400, 409 (W.D.N.Y. 2020) (citation omitted). Both FundKite and Defendants agree on the existence of the contract. (Dkt. No. 54-2, at 4; *see generally* Dkt. No. 57-1). However, the parties disagree on whether FundKite performed. FundKite argues that it upheld the Agreement when it paid Bargain Junction the Disbursement Amount. (Dkt. No. 54-2, at 4). Defendants do not dispute that FundKite paid Bargain Junction the Disbursement Amount.

Defendants argue that FundKite breached the contract by committing "manifest error" in its reconciliation calculation that resulted in an Adjusted Delivery Amount of $16,009.23. (Dkt. No. 57-1, at 3). But having failed to provide any factual evidence in

6

support of this contention, Defendants have failed to raise a material issue of fact regarding a breach of the contract by FundKite. Thus, FundKite has established that it performed its obligations under the Agreement. Accordingly, the Court next considers whether FundKite has demonstrated the absence of material fact with respect to Bargain Junction's alleged breach of the Agreement.

FundKite claims that Bargain Junction breached the Agreement in two ways: "(1) by blocking FundKite's debits from the Designed Account, and (ii) by otherwise refusing to deliver the Remittance Percentage of Receipts" to FundKite "even though Bargain Junction continues to operate and generate Receipts." (Dkt. No. 54-2, at 4). FundKite relies on Shvarts' declaration in support of both theories. (*Id.*). On the first theory, Shvarts states that: "On September 29, 2021, FundKite received notice that it could not debit the Adjusted Delivery Amount from the Designated Account because The Bank of Billings had been instructed to block FundKite's debits." (Dkt. No. 54-3, ¶¶ 10–11). This is the only evidence FundKite offers in support of this claim; as Defendants note, FundKite has not, for example, "identif[ied] or enter[ed] as evidence a copy of the notice it claims it received on September 29, 2021 from The Bank of Billings." (Dkt. No. 57-1, at 5). While Shvarts states that as CEO of FundKite "I have access to the books and records of FundKite" and that the declaration is "based on my review of those records and from personal knowledge," (Dkt. No. 54-3, ¶ 1), Shvarts does not describe the books and records reviewed. Further, to the extent that Shvarts' statement that FundKite's debits were blocked from the Designated Account relies on someone else's statement to FundKite, i.e., that of a bank representative, (*see* Dkt. No. 54-3, at ¶¶ 10–11), it would be

7

inadmissible hearsay, as Shvarts here relies on the statement for the truth of the matter asserted. *See* Fed. R. Evid. 801, 802.

Although Rule 56(c) does not require facts to be presented in admissible form at the summary judgment stage, it does require that such facts be "capable of presentation in admissible form at the time of trial." *United States v. Katholos*, No. 17-cv-531, 2022 WL 3328223, at *1 n.2, 2022 U.S. Dist. LEXIS 143457, at *3 n.2 (W.D.N.Y. Aug. 10, 2022); *see also Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (explaining that "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," and a "district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009))). Here, although Shvarts, as CEO, could likely testify, based on personal knowledge, that FundKite did not receive the September 29, 2021, debit from Bargain Junction's account, absent further facts regarding the source of the information that led Shvarts to assert that the debit's failure was due to a "block" on Bargain Junction's bank account, the Court concludes that FundKite, as the plaintiff and bearer of the evidentiary burden at trial, has failed to establish its entitlement to summary judgment on this claim. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988) ("[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."); *U.S. S.E.C. v. Meltzer*, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (explaining that a "plaintiff moving for summary judgment bears a much greater initial

burden; it must show that the evidence supporting its claims is so compelling that no reasonable jury could return a verdict for the defendant").[2]

On the second theory, FundKite's assertion that Bargain Junction would not restore its debits, that it should send a settlement proposal, and that Bargain Junction continued to operate and generate receipts—all evidentiary support for the proposition that Bargain Junction breached the Agreement by refusing to pay the agreed upon Remittance Percentage of its Receipts—is based on Shvarts' report of what CCS told FundKite. *See* Dkt. No. 54-3, ¶ 13. As Defendants correctly point out, "Plaintiff fails to identify or enter as evidence copies of the correspondence, in any form, it claims to have had with CCS where upon instruction from Defendants, CCS informed Plaintiff that the debits from the Designated Account would not be restored and that Plaintiff should tender a settlement proposal to Defendants despite Defendants' continued operations and generation of receipts." (Dkt. No. 57-1, at 6). What CCS (a non-party) told FundKite, asserted for its truth, is likewise inadmissible hearsay. Consequently, FundKite has failed to demonstrate that breach occurred on the basis of the evidence presented and cannot meet its burden on summary judgment regarding this issue.[3] *See, e.g., Allen v. Schiff*, 908 F. Supp. 2d 451, 459 (S.D.N.Y. 2012) (finding the plaintiff "ha[d] not met her prima facie burden to show race discrimination" in instance where entirety of particular claim rested on inadmissible hearsay).

B.     **Breach of Guaranty**

---

[2] Even if such evidence were sufficient, because the Agreement provides that a breach occurs when "any 'block'" is "placed on" FundKite's debits "by or at the behest of" Bargain Junction, (Dkt. No. 54-4, at 8), and because FundKite offers no facts regarding who placed (or ordered) the block on Bargain Junction's account, FundKite would still fail to establish breach on this theory.

[3] As FundKite has failed to establish the third element of a breach of contract claim, it is not necessary to discuss the fourth element.

"The elements of a claim for breach of guarant[y] under New York law are (1) an underlying obligation, (2) a guarant[y], and (3) failure by the guarantor to make payment in accordance with the terms of the guarant[y]." *EMA Fin., LLC v. AIM Expl., Inc.*, No. 18-cv-145, 2019 WL 689237, at *12, 2019 U.S. Dist. LEXIS 26141, at *28 (S.D.N.Y. Feb. 19, 2019) (quoting *Prof. Merch. Advance Cap., LLC v. C Care Servs., LLC*, No. 13-cv-6562, 2015 WL 4392081, at *5, 2015 U.S. Dist. LEXIS 92035 at *15 (S.D.N.Y. July 15, 2015)).

FundKite has established the existence of underlying obligations and a Guaranty entered into by the Guarantors. (Dkt. No. 54-4, at 17–22; *see also* Dkt. No. 54-1, ¶ 2). But FundKite's allegation that the Guarantors did not make payment in accordance with the terms of the Guaranty is based on the same arguments underlying its claim for breach of contract. (*See* Dkt. No. 54-2 at 6 ("When Bargain Junction did not meet its obligation to (i) deliver Receipts as required by the Agreement without interruption by way of 'stop payment' or any 'block' on Fund[K]ite's debits and (ii) remit Receipts as required by the Agreement and the Gurantors did not ensure that these obligations were met they breached the guaranty.")). As such, FundKite's breach of guaranty claim is subject to the same evidentiary issues as its breach of contract claim[4] and consequently it cannot meet its burden for summary judgment on this claim either.

---

[4] Bargain Junction and the Guarantors are allocated different responsibilities regarding a block on FundKite's debits. The Agreement specifies that an Event of Default would occur if FundKite could not debit the Designated Account "due to any 'block' . . . *by or at the behest of* [Bargain Junction]." (Dkt. No. 54-4, at 8) (emphasis added). In contrast, the Guarantors are obligated in the event any block is placed on the account, regardless of who places that block. (*Id.*, at 17 (listing as an obligation to ensure Bargain Junction performs by "deliver[ing] Receipts as required by the Agreement without interruption by way of 'stop payment' or *any* 'block' on [FundKite's] debits." (emphasis added))). Nonetheless, the evidence that *any* block was placed on FundKite's account remains Shavarts' statement that someone else told Shvarts of the block. (*See* Dkt. No. 54-3, ¶¶ 10–11)).

10

## V.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 54) is **DENIED without prejudice** to renewal, with the submission of documentary evidence; and it is further

**ORDERED** that any renewed motion for summary judgment with documentary evidence must be filed within thirty (30) days of the date of this Order, and the parties' briefing must comply with Local Rules 7.1 and 56.1.

**IT IS SO ORDERED.**

Dated: <u>January 5, 2024</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge